[Cite as *State v. Rashed*, 2025-Ohio-3148.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                    No. 114723

    v.                             :

GLEN RASHED,                            :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689401-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen Hatcher, Assistant Prosecuting Attorneys, *for appellee.*

Judith M. Kowalski, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Glen Rashed appeals the trial court's judgment entry ordering him to pay $29,525.19 in restitution to the victim, which was a bank. After a thorough review of the record and pertinent law, we affirm.

## I. Procedural and Factory History

{¶ 2} On February 24, 2024, Rashed was charged with forgery in violation of R.C. 2913.31(A)(3) and grand theft in violation of R.C. 2913.02(A)(3) related to using a forged check at Navy Federal Credit Union. Both counts contained furthermore specifications providing that the monetary value involved in each charge was $7,500 or more but less than $150,000.

{¶ 3} In November 2024, Rashed entered into a plea agreement, pleading guilty to grand theft as charged. The forgery offense was nolled. The court sentenced Rashed to community-control sanctions for one year. The court also ordered him to pay restitution in the amount of $29,525.19 to the victim-bank, Navy Federal Credit Union.

{¶ 4} This appeal followed.

## II. Law and Analysis

{¶ 5} Rashed's first and second assignments of error challenge the court's failure to conduct a restitution hearing pursuant to R.C. 2929.18 because (1) his counsel specifically requested one at the sentencing hearing and, (2) the failure to conduct a restitution hearing constitutes plain error. We address both assignments of error together.

{¶ 6} Financial sanctions for felony offenses are governed by R.C. 2929.18. Regarding restitution, R.C. 2929.18(A)(1) provides, "[a]t sentencing, the court shall

determine the amount of restitution to be made by the offender."[1]  Pertinent to this case, "[t]he amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."  *Id.*  Relevant to Rashed's first and second assignments of error, "[t]he court *shall* hold a hearing on restitution if the offender . . . *disputes* the amount."  (Emphasis added.)  R.C. 2929.18(A)(1).  When we review for plain error, we determine if "but for the error, the outcome of the [proceeding] clearly would have been otherwise" and only apply it "under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

{¶ 7}  We begin with Rashed's plea.  During his colloquy, the trial court advised him that "[i]t also appears likely that the prosecutor is going to ask for restitution in this case, although the amount is undetermined, but it may be as much as in the range of $29,000."  (Tr. 16.)  Rashed indicated that he understood and

---

[1] A former version of R.C. 2929.18(A)(1) provided that

> the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

As of April 6, 2023, this sentence has been replaced with: "The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution."  R.C. 2929.18(A)(1).

proceeded to accept the plea agreement. Our review of the record does not indicate that restitution was part of the plea agreement.

{¶ 8} At sentencing, the prosecutor who initially offered the plea deal was unavailable. The substitute prosecutor asked for $41,541.50 in restitution based on the amount Rashed attempted to procure from the victim-bank. The court corrected the substitute prosecutor, stating that the figure was $29,525.19, and asked appellant's counsel to verify whether this was correct:

> [THE COURT]: But let me ask [Rashed's counsel] with no disrespect to [the substitute prosecutor], who is new to the case, what's the correct restitution figure here as far as you are concerned?
>
> [RASHED'S COUNSEL]: The figure you stated, your Honor. The [$]29,525[.19].

(Tr. 24.)

{¶ 9} Rashed's counsel then stated that the initial prosecutor "has initial documentation saying there's this loss of that figure. I — before agreeing to anything with restitution — was looking for some sort of affirmative statement that he could get from the bank that they weren't made whole in some other fashion." (Tr. 25.) Counsel had not received this document as of the time of the sentencing hearing.

{¶ 10} The court clarified that the $41,000 figure would have been the restitution amount had Rashed's scheme continued, but the $29,525.19 was the amount that Rashed had actually obtained from his scheme. Rashed's counsel responded that this statement "accurately reflects the facts." (Tr. 25.) Shortly

thereafter, the substitute prosecutor stated that she received a text message from the initial prosecutor who confirmed that the amount of restitution was $29,525.19.

{¶ 11} Despite Rashed's counsel's agreeing that the court's theory "accurately reflect[ed] the facts" and providing the $29,525.19 to the court when asked to verify the restitution number, counsel asked "that either restitution not be ordered or that perhaps a separate hearing on restitution be set down the line if the Court is inclined." (Tr. 27.) The court also remarked that the author of the presentence-investigation report provided that the restitution amount was $29,525.19, though the court did not know how the author arrived at that number.

{¶ 12} Regarding appellant's request to not pay restitution, the court rejected this, stating that "if no restitution is ordered, then people should be doing this all the time because there's no punishment. . . . Now, if the amount is unknown, that's another thing. But if you want zero in restitution just because it was a bank, I guess that that endorses the conduct." (Tr. 29.)

{¶ 13} Rashed points us to *State v. Luna*, 2024-Ohio-5706 (8th Dist.), and *State v. Davis*, 2023-Ohio-3064 (8th Dist.), in which this court has reversed a trial court's decision to forgo a restitution hearing. We, however, find all these cases distinguishable from this matter. In *Luna* and *Davis*, a party to the matter genuinely disputed the amount of restitution owed. *Luna* at ¶ 14 (finding that the prosecutor's records were inconsistent with the restitution amount that the court had); *Davis* at ¶ 8 (counsel pointing out discrepancies in the amount of restitution was sufficient to put the court on notice that there was a dispute).

{¶ 14} The State relies on *State v. Nickens*, 2017-Ohio-1448 (8th Dist.). In *Nickens*, as in the instant matter, the appellant never objected to the amount of restitution, and thus the matter was reviewed for plain error. On appeal, *Nickens* argued that the victim-corporation did not suffer any economic losses because such losses were likely covered by insurance. *Id.* at ¶ 9. However, this court held that "[w]here restitution is imposed but the record does not demonstrate that the victim's economic losses were partly or wholly covered by insurance, we must affirm." *Id.*, citing *State v. Miller*, 2017-Ohio-961, ¶ 12 (8th Dist.).

{¶ 15} Here, Rashed's counsel admitted that the prosecutor gave him some initial documentation evidencing the restitution amount but merely speculated as to whether the bank was made whole in some other fashion. In reviewing the totality of the record, we do not construe this as "disputing" the amount of restitution owed.

{¶ 16} Based on the foregoing factual circumstances that are unique to this matter, we cannot say that the record does not support the trial court's decision to forgo a restitution hearing. Indeed, Rashed's counsel confirmed the amount of restitution and left the decision of a hearing up to the court. Though Rashed's counsel requested a hearing, it does not appear that it was for the purpose of "disputing" the amount of restitution that the statute contemplates because the parties agreed that Rashed fraudulently obtained $29,525.19 from the bank. Rather, the record demonstrates that counsel's request was for the purpose of negotiating a lower restitution amount or no restitution. Additionally, Rashed's counsel left the

ultimate decision regarding whether to conduct a hearing to the discretion of the trial court. The trial court declined to hold the hearing.

{¶ 17} We therefore cannot conclude that the trial court acted contrary to law in declining to hold a hearing nor can we conclude that refusing to hold such a hearing was plain error. Accordingly, we overrule Rashed's first and second assignments of error.

{¶ 18} Rashed's third assignment of error suggests that he received ineffective assistance of counsel "if this court finds that his counsel failed to request a restitution hearing, failed to sufficiently dispute the state's restitution demand, and/or failing to object to the restitution order to preserve the issue for review."

{¶ 19} To prevail on an ineffective-assistance claim, Rashed must demonstrate that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him. *State v. Bates*, 2020-Ohio-634, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Courts considering whether an attorney's performance fell below an objective standard of reasonableness, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. A defendant establishes prejudice by showing that "there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 2020-Ohio-309, ¶ 10.

{¶ 20} Both *Strickland* prongs must be established and failure to prove one prong makes consideration of the other prong unnecessary. *State v. Morgan*, 2018-

Ohio-1834, ¶ 11 (8th Dist.). Here, we cannot say that Rashed has established prejudice. The record contains competent, credible evidence supporting $29,525.19 in restitution, and there was no genuine dispute regarding this amount. During his plea hearing, Rashed acknowledged that he would be subject to approximately $29,000 in restitution. During sentencing, Rashed's counsel admitted that he received documentation in discovery showing the amount, the initial prosecutor and substitute prosecutor both confirmed the amount, and the presentence-investigation report contained the same amount. We also cannot find that a hearing would have been necessary or beneficial to Rashed because there was no dispute as to the restitution amount, but rather a request for a smaller sanction. We also note the trial court's comments during sentencing indicating that Rashed should pay the full amount of restitution to properly condemn his criminal activity and that failure to order this amount would encourage Rashed's misconduct.

{¶ 21} Based on the foregoing, Rashed has not demonstrated how he was prejudiced by his counsel's alleged deficiencies and accordingly, we overrule his third assignment of error.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
DEENA R. CALABRESE, J., CONCUR